J. W. LEE v. F. J. CONRAD AND J. P. SCHOWALTER, Appellants.

**Agency:** COMMISSION CONTRACT: AUTHORITY OF ONE JOINT OWNER.
1  One joint owner in possession of a farm, with authority to negotiate a sale of the property as any owner would ordinarily do, may bind his co-owner by an agreement to pay a commission for procuring a purchaser.

**Same:** INSTRUCTIONS. Where there was no conflict in the evidence
2  as to the authority of one joint owner of property to bind the other by a contract of sale of the property, in the absence of a request the court was not called upon to give a specific instruction on the question of agency and authorizing a finding for plaintiff against both owners, if a contract was made by one or both, to pay a commission for finding a purchaser upon performance by plaintiff.

**Commission contract:** REASONABLENESS: INSTRUCTION. The agree-
3  ment to pay a broker having several farms for sale in the same locality a commission of $500 for simply producing a possible purchaser, with whom he used no influence to effect the sale, is held not to have been harsh or unreasonable under all the circumstances; and the court was justified in telling the jury this question was not for them to determine, but whether the contract was in fact made as claimed and performed, although the same might be taken into consideration in weighing the testimony.

**Instructions.** No prejudice arises from the giving of a correct in-
4  struction concerning an issue which is controverted by the evidence.

Rendition of second judgment: CORRECTION OF NAME. Where the proper party in fact appears and defends an action but is misnamed in the judgment, a second judgment upon the same verdict may be rendered against him by his right name, in a proper proceeding and upon service of notice thereof.

*Appeal from Henry District Court.*—HON. W. S. WITHROW, Judge.

WEDNESDAY, OCTOBER 28, 1908.

ACTION to recover commission for producing a prospective purchaser for defendants' land under a contract. There was a verdict and judgment for the amount claimed, and defendants appeal.—*Affirmed.*

*W. F. Kopp,* for appellants.

*C. O. Longley* and *McCoid & Finley,* for appellee.

McCLAIN, J.—Defendants were owners of a farm in Minnesota, which they desired to sell. Conrad lived upon the farm and had the management thereof, and Schowalter lived at Mount Pleasant in this State. Conrad, purporting to act for both, made an oral agreement, as the testimony tended to show, with the plaintiff, in which it was provided that if plaintiff, who was a real estate agent, would bring to look at defendants' farm a certain customer whom he expected to come to look at farms in the neighborhood which plaintiff already had listed with him for sale, and a sale of defendants' farm should be made to such customer, plaintiff should receive a commission of $500. It appears without question that plaintiff did bring the customer referred to, one Claypool, to look at defendants' farm after showing him other farms, and that defendants traded their farm to Claypool in exchange for other land.

I. The authority of defendant Conrad to bind his codefendant Schowalter by any contract with plaintiff is questioned in argument. But Schowalter himself testi-

fied that he and Conrad owned the farm together, and
that Conrad had authority to make a sale

**1. Agency: commission contracts: authority of one joint owner.**

binding on him, and that he also had author-
ity to make a sale binding on Conrad. It
seems to us that the authority given by Schowalter to
his co-owner Conrad to make a contract for a sale im-
plied the authority to agree to pay a commission. The
power to make a sale—that is to negotiate a contract for
a sale—is a different power from that conferred by a
naked power of attorney to convey. Conrad does not ap-
pear to have had the authority to convey, but, on the other
hand, the general authority to negotiate a sale, and that
included the authority to do those things usually inci-
dent to negotiating a sale of real property by the owner,
of which the payment of a commission to an agent is
one. The whole transaction must be looked at in the
light of the circumstances. Conrad was not a real estate
agent, but was in possession of the farm, with authority
to negotiate a sale of it as any owner would usually
negotiate the sale of his own property, and to that pur-
pose the employment of an agent to procure a purchaser
is a usual incident. *Renwick v. Bancroft,* 56 Iowa, 527;
*Richter v. Meyers,* 5 Ind. App. 33 (31 N. E. 582);
*McKinnon v. Vollmar,* 75 Wis. 82 (43 N. W. 800, 6
L. R. A. 121, 17 Am. St. Rep. 178); Mechem on
Agency, Section 193.

There is no conflict in the evidence as to Conrad's
authority to represent Schowalter in contracting for a
sale, and the court did not therefore err in failing to
instruct the jurors specifically in regard to

**2. Same: instructions.**

the subject of agency, and authorizing them
to find for the plaintiff, as against both
defendants, if it should be found that a contract was
entered into between plaintiff "and the defendants or one
of them acting for both of them," such as plaintiff alleged
in his petition, and that plaintiff performed the agree-

ments and conditions obligatory on him under such con-
tract. No instructions were asked with reference to. the
question of agency, and in the absence of any conflict in
the evidence on the subject, the court was not called upon
to give such instructions.

II.  In one of the instructions the jury was told
that contracts voluntarily entered into between parties
create rights which upon performance thereof may be
enforced, and that it was for the jury to
determine, not whether the contract relied
upon · by plaintiff was harsh or unreason-
able, but whether it was entered into as claimed, and
performed.  It is contended for appellants that the con-
tract to which plaintiff testified was harsh and unrea-
sonable, in that plaintiff was to have a commission of
$500 for no other service than that of bringing Claypool
to look at defendants' farm without any obligation
to solicit or endeavor to procure Claypool to pur-
chase said farm.  But again the . circumstances must
be borne in mind.  Claypool, as a customer of plaintiff,
was to come into the neighborhood to look at farms.  Plain-
tiff, having other farms listed with him for sale, was
hoping to secure a commission (in one instance of over
$600) if he could effect such sale.  Conrad evidently
assumed that Claypool would find defendants' farm a
better bargain than any of the others, and purchase it.
If he did so, plaintiff would lose his possibility of a
commission in the sale of another farm.  It was not
therefore entirely unreasonable that Conrad should agree
to pay $500, which was not an exorbitant commission
for the sale of defendants' farm if this prospective pur-
chaser should buy that farm, instead of one of the other
farms which plaintiff was trying to sell to him.  While
in general an agent seeking to earn a commission for
the sale of real property may be under obligation to use
some influence with a prospective purchaser to effect the

3. Commission
Contract:
reasonable-
ness: instruc-
tion.

sale, yet if he as broker is representing, as Conrad knew plaintiff to be representing, various owners, all anxious to effect sales, he can hardly do more than exhibit the property. He can not be expected to urge such purchaser to buy one piece of property rather than another. Therefore the fact that plaintiff did not agree to urge upon Claypool the purchase of defendants' farm, and did not as a matter of fact solicit him to purchase it, is quite immaterial. The important thing to defendant was that this prospective purchaser should be brought by plaintiff to look at defendants' farm, so that he might buy it if he saw fit. Under these circumstances the court might properly say to the jury that it was immaterial whether the contract was harsh or unreasonable, the question being whether it was in fact entered into and performed.

The harshness or unreasonableness of the contract might be taken into account in weighing testimony of witnesses as to what the terms of the contract in fact were; and there was such a question in the case, for Conrad testified to a contract different in terms from that testified to by plaintiff. But in another instruction the court told the jury that, "in considering the testimony of any witness, you should bear in mind the interest, if any, which the witness has in the matter in controversy; whether his testimony was fair, candid, and honest, or biased and prejudiced; whether the statements made by the witness were reasonable or unreasonable; and whether contradicted or corroborated by the facts in the case as you may find them. All of the testimony should be carefully considered, weighed, and compared in the light of reason and common sense." It was thus left to the jury to consider the nature of the contract testified to by plaintiff as to being harsh and unreasonable in weighing the testimony of plaintiff as against that of Conrad, who testified that a different contract was made. In this respect we find no error in the instruction.

III.   It is complained, with reference to another instruction, that it presented a theory of the defense which there was no evidence to support; but, reading the evidence, we reach the conclusion that there 4. INSTRUCTIONS. was a conflict as to the matter about which the jury was instructed, and as the instruction given was in itself without error and favorable. to the defendants, we can not see how defendants were in any way prejudiced.   The issues with reference to which the instruction was given appeared in the testimony, and that was enough to justify an instruction by the court.

Other instructions are criticised, but, as we think, without reasonable grounds.   So far as appears from ·the record the instructions were applicable to the issues made in the pleadings or appearing in the evidence, and were unobjectionable. ·

IV.   There is some complaint as to the rendition of a second judgment against defendant Conrad.   It appears that the first judgment entered on the verdict 5. RENDITION OF was against defendant Conrad and S. C. SECOND JUDG- MENT: correc- Schowalter.   Subsequently, in a proper pro- tion of name. ceeding, J. P. Schowalter, having been served with notice, was found to be the real party defendant described as S. C. Schowalter, and the party who had in fact defended, and a second judgment was rendered on the same verdict against J. P. Schowalter and said Conrad.   We can not discover that any prejudice resulted to Conrad from this second judgment, and no complaint· seems to have been made in the lower court in that respect.

V.   There is no merit in the contention for appellant that the verdict is without support in the evidence.   We have examined . the record, and find ample evidence to sustain plaintiff's claim.

The· conclusion which we have reached renders it unnecessary to pass upon appellee's motion, submitted

with the case, to strike appellants' argument from the files.

The judgment of the trial court is therefore *affirmed.*